ALICE E. MARTIN, Appellant, v. ANNIE KENEFIC O'BRIEN, Respondent.

(173 N. W. 809.)

**Action to quiet title — adverse possession — what constitutes.**

This is an action to quiet title to a quarter section of land in Ramsey county. As the proof shows the title stands of record in the name of the defendant, but the plaintiff is the owner of the land, and she and her deceased husband have been in actual and adverse and continuous possession for over twenty years and have paid all taxes.   Hence, the title of plaintiff is quieted and confirmed.

Opinion filed November 30, 1918.   Petition for rehearing filed May 9, 1919.

Appeal from a judgment of the District Court of Ramsey County, Honorable *C. W. Cooley*, Special Judge.

Plaintiff appeals.

Reversed and remanded.

*J. C. Adamson* and *H. S. Blood*, for appellant.

Where the plaintiff in ejectment has been in possession of the land for nearly thirty years, the fact that the land was embraced in a deed to the defendant is not sufficient to defeat the plaintiff's title.   Jones v. Graham, 80 Ga. 591; LaFrambois v. Jackson, 8 Cow. 589, 18 Am. Dec. 473; Draper v. Shoot, 25 Mo. 197, 69 Am. Dec. 462.

To constitute an adverse possession there need not be a fence, building, or other improvement made; it is sufficient if visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute.   Ewing v. Burnet, 11 Pet. 53; Wallace v. Maxwell, 51 Am. Dec. 380; 1 Am. & Eng. Enc. L. p. 888.

The testimony of respondent that she had executed no deed to anyone, on account of her being a party to the action her evidence is incompetent, and the court cannot consider such testimony in an action of

this nature. Regan v. Jones, 14 N. D. 691, 105 N. W. 613; Dowdy v. Watson, 115 Ga. 42, 41 S. E. 266; Webb v. Simmons, 3 Ga. App. 639, 60 S. E. 334; Georgia Chemical Works v. Cartledge, 77 Ga. 547, 4 Am. St. Rep. 96; Jarvis v. Andrews, 80 Ark. 277, 96 S. W. 1064; Steinwand v. Brown (N. D.) 166 N. W. 129; Nash v. Land Co. 15 N. D. 566, 108 N. W. 792.

In making up the time required by statute to acquire title to land by adverse possession, the wife is entitled to tack her possession to that of her deceased husband. Georgia Chemical Works v. Cartledge, 77 Ga. 547, 4 Am. St. Rep. 96; Jarvis v. Andrews, 80 Ark. 277, 96 S. W. 1064; Stein v. Brown (N. D.) 166 N. W. 129; Nash v. Land Co. 15 N. D. 566, 108 N. W. 792.

*W. M. Anderson,* for respondent.

In every action for the recovery of real property or the possession thereof the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law; and the occupation of such premises by any other person shall be deemed to have been under an insubordination to the legal title, unless it appears that such premises have been held and possessed adversely, to such legal title for twenty years before the commencement of such action. Comp. Laws 1913, §§ 7365, 7370, relating to landlord and tenant.

Where possession is originally taken under the true owner, a clear, positive, and continued disclaimer and disavowal of title, and an assertion or an adverse right brought home to the true owner, are indispensable before any foundation can be laid for the operation of the Statute of Limitation. If this were not so the greatest injustice might be done. Without such knowledge the owner has a right to rely upon the fiduciary relation under which the possession was originally taken and held. 1 Cyc. 1022.

The possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other, until such occupant has changed the character of his possession, either express declaration or the exercise of actual ownership inconsistent with a subordinate character. 1 Cyc. 1033.

The mere fact that claimant has had possession of the land for the

statutory period will not suffice to satisfy the rule requiring the disseisor's possession to be hostile. 1 Cyc. 1026 and cases cited.

ROBINSON, J. The plaintiff is the widow and the legal successor of Daniel E. Martin. She brings this action to quiet her title to the southwest quarter of section 1—Twp. 155—Range 63. To a person who has lived in this state from early territorial times, and who knows how the titles were then acquired, the case presents not the least shadow of doubt. It is true the record title is in the defendant, but that is a matter which she just recently discovered.

In May, 1884, in the United States Land Office in Grand Forks, entry was made of the land and a receiver's receipt showing payment of $200 was issued to Elizabeth Kenefic. Then she made to her brother Daniel E. Martin a warranty deed of the land. As a question was raised concerning the validity of the entry, Martin through Frank Wilder quitclaimed the land back to the United States. Then he caused his sister, the defendant, to file on the land, and in December, 1889, in consideration of $200, the receiver of the United States Land Office issued the usual duplicate receipt for this land to Annie Kenefic. She at once mortgaged the land for $1,200, and in the course of a year the mortgage was paid by Daniel Martin. Doubtless at the time of mortgaging the land Annie Kenefic made to Daniel Martin a deed of the land in the same manner as her sister had done. But he wisely held the deed from record so as not to furnish evidence that the entry had been made for him. Manifestly the two sisters filed on this land and made entry of the same for Dan Martin, their brother. Neither of the sisters ever cultivated the land, made any improvements on it, or paid out a dollar for the making of final proof and entry. That was all done by Dan Martin. He caused the land to be mortgaged; he mortgaged it several times and paid the mortgages. From 1884 until the time of his death, in 1909, his possession of the land was continuous. During all of that time as owner in fee he was in the actual, open, adverse, and undisputed possession of the land, and he paid all taxes against it. And since then, the plaintiff, his legal successor, has continued in the open, adverse, and undisputed possession of the land and has paid all taxes against the same.

Just before this action was commenced, the plaintiff obtained an abstract of title and discovered that the title of record stood in the name of Annie Kenefic and applied to her for a quitclaim. In that way defendant discovered that the title was in her name and she concluded to hold it. The facts speak louder than words, and show beyond question that the plaintiff owns the land and the defendant has no title or interest in it. Hence, the judgment must be reversed and a judgment entered to the effect that the plaintiff is the owner in fee of the land and that her title be quieted and confirmed.

Reversed and remanded.

BIRDZELL, J. (concurring specially). I concur in the reversal of the judgment in this case for the reason that, as I view the evidence, it establishes quite conclusively that the claim asserted by the defendant Annie Kenefic O'Brien is barred by the Statute of Limitations.

It is an established rule in this jurisdiction that § 7381, Compiled Laws 1913, which is a part of the Statute of Limitations, is more than a statute of repose (Steinwand v. Brown, 38 N. D. 602–611, 166 N. W. 129), and we see no distinction in this respect between the ten-year statute (§ 7381, supra), and the twenty-year statute (Comp. Laws 1913, § 7362).

Section 7392 provides that no action for the recovery of real property or for the recovery of the possession thereof shall be maintained unless it appears that the plaintiff, his ancestor, predecessor, or grantor was seised or possessed of the premises in question within twenty years before the commencement of such action. See authorities cited in the note in 46 L.R.A.(N.S.) 506.

If the possession of Daniel Martin and of Alice E. Martin had been adverse for the period of twenty years, the plaintiff in this action is, under the rule stated, entitled to have her title quieted as against the claim of the defendant, which can no longer be successfully vindicated by reason of the Statute of Limitations.

In my opinion the evidence does show that the possession of Daniel Martin was adverse. The evidence upon which this conclusion of fact is based is that which describes the relation between Daniel Martin and his sister at the time the first proof was made, at which time a warranty deed was given by the sister making the proof; the

transactions with respect to the various mortgages which show that the land from the beginning was used by Martin as security as though it were his own; the fact that for many years Martin and his sister, the defendant, Annie Kenefic O'Brien, lived in the same neighborhood; that Martin farmed the land all of the time; that there is no evidence that any rental was ever paid to the defendant or that any claim was ever asserted by her,—that, though Daniel Martin died in October, 1909, and the possession of the plaintiff and appellant continued from that date until the commencement of this action on the 29th day of October, 1917, there is no evidence that any rental was ever paid by the plaintiff to the defendant or that any claim of any sort was ever made by the defendant during this period as owner of the property in question.

The evidence, embracing the relationship assumed by the parties themselves to the land in question, is much more convincing to my mind than the testimony of the brother, which tends to show that Daniel Martin in his lifetime continued to recognize the right of his sister to the land.

The circumstance of the land being assessed in the name of the defendant is, in my judgment, not of any greater importance than the character of the record title itself; for it is universally known that the assessment is in the name of the record owner as a matter of course, and that in reality real property taxes are assessed *in rem* rather than *in personam*. There is no evidence that Annie Kenefic O'Brien has ever paid any taxes on the property in question; on the contrary it appears that the taxes have uniformly been paid by the plaintiff since the death of Daniel Martin and by him prior to his death.

Upon this record I am convinced that Daniel Martin in his lifetime was in adverse possession of the land, and that after his death his widow continued in adverse possession; such adverse possession was continued for a sufficient period of time to bar the claim of the defendant under § 7362, Compiled Laws of 1913.

I am authorized to say that Chief Justice Bruce and my associates, Justices Christianson and Robinson, concur in the foregoing views.

GRACE, J. (dissenting). The action is one to quiet title to the S.W.¼ of section 1, township 155 north, of range 63 west of the 5th

principal meridian in Ramsey county, North Dakota. The plaintiff, in substance, alleges in her complaint that she is the widow of one Daniel E. Martin, who died testate in Ramsey county, North Dakota, on October 9, 1908; then follows allegations showing that the will was duly admitted to probate in said county and the entry of the final decree of distribution; that certain lands described in the final decree among which was the land in question in this action. The complaint alleges that Daniel E. Martin during his lifetime was in possession of the land involved in this action from about the 26th day of December, 1889, continuously to the time of his death, October 9, 1909, and that the plaintiff continued in possession since the death of Daniel E. Martin, husband, and is now in possession thereof, and has paid the taxes thereon since 1909, and that Daniel E. Martin paid the taxes on the premises for the years 1890 to 1908 inclusive. Complaint alleges the actual, exclusive, and continuous occupation of said premises adverse to the defendant in the manner and for the period above described. Complaint further alleges that from 1890 to 1908, inclusive, Daniel E. Martin took the rents and profits of the said land and since 1909 the plaintiff has taken them.

The defendant, in her answer, in substance alleges that she filed on the land in question and made final proof on such land and received the final receiver's receipt No. 14,325 issued her on the 24th day of December, 1889, which was filed and recorded in the office of register of deeds of said county, and further alleges all the times thereafter she has been owner and in possession of said premises and is now such owner and in possession.

Paragraph 3 of defendant's answer reads thus: "That at the time of making her final proof to said land only about 10 acres thereof was broken and fit for cultivation, and that she arranged with the person mentioned in the complaint as Daniel E. Martin, who was her brother, to put the land into crop the following year, and in accordance with said arrangement he went into possession as her tenant and agent and continued in possession of said premises as such up till his death in 1909, with her permission and knowledge, and from year to year as he saw fit and was able to do so broke said land and paid the taxes, taking his pay in the crops raised on said premises. That not all of said land was suitable for cropping purposes, and with the consent of

the defendant he was permitted to and did erect a pasture fence on said premises, and has pastured that portion for about sixteen years. That plaintiff's possession is that of a trespasser."

Paragraph 4 reads thus: "That defendant's maiden name was Annie Kenefic, and a short time after having proved up this land she was married to Thomas O'Brien, who is a farmer residing in said community at a distance of about 4 or 5 miles from the land in question, and that during said period the said Daniel E. Martin has at no time made any claim to her that he had any interest in said land beyond that of a tenant who was in possession of said land as such and has paid the taxes on said land as such, and has paid the taxes on said land, which were assessed in her name till 1905, when he surreptitiously had it assessed in his name without the knowledge or consent of the defendant."

The answer then sets up an independent cause of action against the plaintiff by way of counterclaim for rents for the value of the use of said premises since the year 1910, alleging the annual amount due for such use of land to be $320, and demanded an accounting for the rents. To the answer the plaintiff replied, denying practically all the allegations of the answer, and pleads the Statute of Limitations as to the right to recover rents claimed by defendant. The facts in the case, stated concisely, are as follows:

On or about the 24th day of December, 1889, Annie Kenefic made final proof of the land in question and received a receiver's receipt No. 14,325, which was duly filed for record, and a patent was afterwards issued to her by the government for the land. It appears that, before the time Annie Kenefic filed upon and made final proof upon such land, it had been previously filed upon by Elizabeth Kenefic, sister of the defendant, who made final commutation proof and paid the government $200 at that time, and afterwards mortgaged the same to one Whithed for $275. She sold the land to Daniel E. Martin, her brother, the husband of the plaintiff, for $1,000. On the day that Martin bought the land, he and his wife, the plaintiff in this action, executed a mortgage upon the land to Elias B. Reid for $1,000. Martin paid the $275 mortgage. It seems thereafter the entry of Elizabeth Kenefic was canceled and the land reverted to the government, and the same was afterwards filed upon by Annie Kenefic and proved up

at the time aforesaid.   After Annie Kenefic made final proof she
gave a mortgage on the land for $1,200 to Elias B. Reid, $200 of
which was to pay the commutation proof money and the $1,000 was
probably given in lieu of the $1,000 mortgage and note that Daniel E.
Martin and wife had given on the land to Elias B. Reid in 1884.   Mar-
tin afterwards paid the $1,200 mortgage, and afterwards mortgaged
the land, together with the N.E.$\frac{1}{4}$ section, to the Vermont Loan &
Trust Company.   It is not shown by the evidence that defendant had
any knowledge of this mortgage.   It is claimed on behalf of plain-
tiff that Martin farmed the land before and during the time Elizabeth
Kenefic was proving it up and at the time he bought it from Elizabeth
Kenefic, and also while Annie Kenefic was proving it up.   It is
claimed Martin farmed and pastured it ever since until 1909, since
when his widow has farmed it; and the claim is that during all the
years from 1889 down to the time this action was instituted, defendant
never made any claim to be the owner of the land or any claim for
rents or profits or for the possession.

The defendant claims that Daniel E. Martin, her brother, was in
possession of the land as her tenant and agent, and continued in pos-
session of said premises as such until his death in 1909.   When the
land was transferred from Elizabeth Kenefic to Daniel E. Martin,
he retained title for only about seven days, when he transferred it to
Wilder.

The main question in this case is:   Was Martin, prior to his death,
and the appellant since his death, holding the premises adversely to
the defendant? and, second:   Is the defendant estopped from claiming
the land and the possession thereof or the rents or profits by reason
of her alleged laches and silence during said time?   Upon full exam-
ination of the record, we are thoroughly convinced that the questions
above should be each answered in the negative.   It is clear to us that
no right claimed by the plaintiff can be reinforced by reason of any
possession Daniel E. Martin had of such land during the time Eliza-
beth Kenefic claimed any right to said land by reason of her entry
of the land or her final proof of entry thereafter made.   It appears
from the record that her proof must have become invalid and her
entry canceled and the land turned back to the government and thrown
open to public entry.   If this were true, and we think it is, any

rights or claims of Daniel E. Martin by reason of entry of said land by Elizabeth Kenefic became of no force or effect as soon as the land was turned back to the United States government. The deed which she gave Martin to the land did not even operate to give him color of title, when, after the delivery of the deed, the land was returned to the government and became thereafter public land subject to homestead entry. The entry of Elizabeth Kenefic having been canceled and the land thrown open again as government land for entry under the Public Land Laws, whoever filed upon the land would do so free and clear of any alleged right or prior possession of any person which may have existed prior to the time the land in question was relinquished to the United States government. The land must have been relinquished to the government, or it could not have been again filed upon by Annie Kenefic. The alleged possession of Daniel E. Martin while the entry and filing of Elizabeth Kenefic was in force and effect cannot be tacked on to his possession, if any, under the filing and entry of Annie Kenefic. The rights and possession, if any, which he had under the Elizabeth Kenefic entry, were entirely disposed of when the land was relinquished or turned back to the government and again became public land subject to entry, and which was filed on as such by Annie Kenefic. Her entry on the land was free and clear from every claim of Martin or anyone else except that of the United States, she being of course bound to comply with the requirements of the Homestead Laws as to residence, etc. We need, therefore, only consider what has taken place since Annie Kenefic filed upon said land.

We are of the opinion that the claim of the defendant, that Daniel E. Martin, her brother, was in possession of the land as her tenant and agent, is strongly supported by the testimony of E. B. Kenefic, who is a brother of Elizabeth Kenefic, Maggie Kenefic, Daniel E. Martin, and the defendant. Martin at some time seems to have changed his name from Kenefic to Martin.

The following questions were asked of E. B. Kenefic:

O. Do you know what arrangement, if any, Dan Martin had with Annie Kenefic with reference to farming this land? If so, what were they?

A. Yes, I know. Dan was hard up that fall and about to lose his

home place. I think it was Frank Wilder, of Grand Forks, that had the mortgage on it. He told Annie, in my presence, that if she let him use her quarter for additional security for to tide him over, which she did, that he would break up her quarter section and crop it until he paid her a sum equal to the amount he was using it for, $1,000 I believe. I think they made a loan of $1,400 on it, but Dan was to get $1,000. I can't remember the man's name that loaned it. If I heard it I could recall.

Q. Subsequent to that time, did you hear Dan Martin make any statement about what arrangements he had with Annie Kenefic with reference to this land?

A. Twelve years ago last fall, at the time of the fair at either Fargo or Grand Forks, Dan was going to the fair and I was going to St. Thomas, North Dakota, with my family. I met Dan at the station house at Grand Forks and inquired how the crops were up there; he told me that the hail had touched Annie's quarter twice that year, but he got a good crop on the home place and the quarter he bought from Jake Trout; he said: "Ed, if Annie gave me that quarter it would not pay for the seed that I've lost on it; it was the most unlucky quarter in the state of North Dakota."

Q. Did Dan Martin at any time or times speak to you about this quarter? If so, state when and where.

A. Yes, when I was at Kent, Minnesota, in talking over his crops and business, he always referred to that quarter as "Annie's quarter."

We think the testimony of E. B. Kenefic clearly shows an arrangement between the defendant and Daniel E. Martin whereby he was to break up the quarter section of land in question and crop it until he had paid her $1,000, besides paying the $1,000 which was borrowed on the land for his use and benefit. It does appear that the defendant did make the loan of $1,200, that she got no benefit of it excepting the $200 which was paid to the government, and the $1,000 was in lieu of the $1,000 note that Daniel E. Martin and his wife had given on the same land to Elias B. Reid. Martin afterwards paid this mortgage, which, as we view it, it was his duty to do. He never has had any legal title to the land since the defendant filed upon and made final proof of the same, and has had no legal right or authority to give any

mortgages on it signed by himself and his wife. It was his further duty to pay the defendant for the use of the land in the amount agreed upon as testified to by E. B. Kenefic. If such agreement were made, and the testimony of E. B. Kenefic shows it was, the relation between the defendant and Martin was that of landlord and tenant. If such were the relations, Martin could not hold or claim the land adversely to the defendant. If the arrangement were made, as testified to by E. B. Kenefic, the defendant took possession of the land in question by the consent of the defendant, and under an arrangement and agreement to farm the same.

Under § 7370, Compiled Laws 1913, where the relation of landlord and tenant has existed, the possession of the tenant is presumed to be the possession of the landlord until the expiration of twenty years from the termination of the tenancy; or when there has been no written lease until the expiration of twenty years from the time the last payment of rent. The twenty-year period that the possession of the tenant is presumed to be the possession of the landlord may be computed from the time when the arrangement to farm the land for the defendant by Daniel E. Martin was made, which was in the fall of 1889.

As to the time when the arrangement was made between Daniel E. Martin and the defendant as to the farming of the land, the following questions asked of E. B. Kenefic, and his answers thereto, are in point:

Q. Have you in mind the land proved up by Annie Kenefic in the year 1889 in Ramsey county, North Dakota, and do you remember the time that said Annie Kenefic proved up on said land?

A. Yes, I was there.

Q. Do you know what arrangements, if any, Dan Martin had with Annie Kenefic with reference to farming this land? If so, what were they?

A. Yes, I know. Dan was hard up that fall and about to lose his home place, etc. [The balance of the answer we have heretofore quoted.]

The fall referred to was evidently the fall of 1889, which was the time the arrangement was made with defendant by Daniel E. Martin to farm the land. There is no showing of the termination of tenancy or the last payment of rent nor the payment of any rent, but counting

twenty years from the time the relation of landlord and tenant was initiated before plaintiff or those under whom she claims could commence to claim adversely to defendant, it would be 1909 before a claim adverse to the defendant could be initiated. Until that time, the possession of Daniel E. Martin would at all times under said arrangement be presumed to be the possession of the defendant, or, in other words, that of his landlord. In other words, in order to prevail in this action, Martin or those claiming under him would have to hold the land adversely to the defendant for twenty years commencing approximately with the fall of 1909 in order to ripen the title of said land in them by adverse possession.

It is not sufficient to show that Daniel E. Martin entered into possession of such land, but it must also appear that such entry was made under claim of title.

Section 7365, Compiled Laws 1913, provides that "in every action for the recovery of real property or the possession thereof the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law; and the occupation of such premises by any other person shall be deemed to have been under and in subordination to the legal title, unless it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action."

The legal title was in the defendant. Considering in connection with this section, § 7370, which declares the possession of the tenant to be that of the landlord where such tenancy is shown to have existed, and the further fact that there is no showing that the alleged possession of Daniel E. Martin or those claiming under him was by claim of title, it cannot be said that he or those holding under him were holding or claiming adversely to the defendant.

Under § 7366, Compiled Laws 1913, in order to constitute entry of possession upon a written instrument, judgment, or decree or otherwise, and to constitute such entry adversely to the legal title, such entry or continued possession must be under claim of title.

The warranty deed from Elizabeth Kenefic to Daniel E. Martin executed and delivered in 1884 was not sufficient upon which to base claim of title. After the execution and delivery of such deed the land reverted to the government and again became government land

subject to homestead entry. When the land went back to the government and was relinquished to it by deed or otherwise, all alleged rights of every description and kind, including that of possession and title or color of title, were devested from those who claimed them, and the title of such land was in the government, free and clear of all such claims or right, and the government could again offer the land for homestead entry, free and clear of all such rights and claims, and Annie Kenefic, who made subsequent entry of the land, would take the land from the government, free and clear of any prior claims or rights of any person and of everyone excepting those of the United States government. It is clear that the deed from Elizabeth Kenefic to Daniel E. Martin, in view of these facts, was not sufficient to support a claim of title, neither does such possession as he had before the land was turned back to the government avail anything to him or those claiming under him. All such rights, if any, were entirely eliminated by the return of the land to the United States government. None of the testimony offered by the plaintiff is effective to show any claim of title at the time Martin entered possession, nor does it have any particular tendency to prove the elements necessary to establish title to the land by adverse possession. The evidence to prove title by adverse possession should be clear and conclusive as to every element of it, and cannot be established by inference or implication.

As we view the matter, there is no showing that the possession by Daniel E. Martin was adverse to the defendant's title, and the plaintiff has wholly failed to prove, by clear and convincing testimony, title to such land by adverse possession. Since the entry of the final decree in the estate of her husband, the plaintiff has held such land under color of title and adverse to defendant's title, but such period of time falls far short of the twenty-year period required by law. This being true, the defendant is entitled to recover for the use and occupation since the entry of the decree in 1912, and such recovery is not barred by the Statute of Limitations. We think the plaintiff should be credited with the taxes paid by her, with interest from the date of payment.

The judgment of the District Court should be affirmed.

PER CURIAM. Defendant has petitioned for a rehearing. We have considered the petition, and in connection therewith have once more

read the record, with the result that we are satisfied that the facts as stated in the opinion prepared by Mr. Justice Birdzell are fully sustained by the evidence in the case. Not only is there evidence to the effect that Daniel E. Martin from 1884 up to the time of his death in 1909 was in uninterrupted possession of the land, treating it as his own, paying all taxes thereon, mortgaging it as his property, and speaking of it as "mine;" but it is undisputed that during all of this time the defendant never exercised one act of ownership over the land, neither collected nor demanded any rent, nor paid any taxes. It is also undisputed that this same condition continued after Martin's death. The plaintiff as executrix listed the land in the probate proceedings; she paid the taxes, and continued to occupy and treat it as property belonging to the estate. It is unquestioned that she did this in the belief that the property was in fact part of her deceased husband's estate. The defendant residing a short distance away never even suggested that the land belonged to her. The testimony of E. B. Kenefic was by deposition. Hence, the trial judge was in no better position to determine the credit to be given to this testimony than are the members of this court. We see no reason for receding from our former opinion. We are of the belief that it is warranted by the evidence, and is in accord with right and justice.